UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case 21-81070 |
| | ) | |
| Naté Lynn Shreeves, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The Debtor, Naté Lynn Shreeves, has brought a "Motion for Sanctions" against Last Chance Funding, Inc. and The LCF Group (collectively "LCF")[1] seeking actual and punitive damages pursuant to 11 U.S.C. § 362(k) for an alleged violation of the automatic stay. (ECF No. 31.)  In the motion, the Debtor alleges that a post-petition voicemail from LCF, one of the creditor's listed in her schedules, caused her to suffer humiliation, embarrassment, and emotional distress.  LCF denies any such violation, arguing that the voicemail was directed to the Debtor's company, Mixin Mingle, Inc., not the Debtor individually.[2]  After consideration of the parties' written submissions, the evidence presented at the evidentiary hearing on this matter, and taking judicial notice of the contents of the docket when appropriate, *see Levine v. Egidi*, No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993), the court finds that the Debtor

---

[1] Although the Debtor's motion purports to be brought against two separate entities, the court finds from the evidence presented that there is a single corporate entity known as Last Chance Funding, Inc. d/b/a The LCF Group. (*See* Def.'s Ex. A, Addendum to Purchase Agreement.)

[2] At the evidentiary hearing, the Debtor testified generally that she was the owner of Mixin Mingle. Her bankruptcy petition and schedules indicate that she holds an 81% ownership interest in the corporation.  For purposes of this order, the court will refer to Mixin Mingle as the Debtor's company where appropriate.

has not met her burden to show a willful violation of the automatic stay.  Accordingly, her motion for sanctions is denied.

## BACKGROUND

On December 27, 2019, the Debtor's company entered into a Merchant Agreement with LCF for the purchase and sale of future receivables. (Def.'s Ex. A.) The Debtor signed the Merchant Agreement as both the president of Mixin Mingle and as a guarantor.  The Debtor testified at trial that she provided the contact information for Mixin Mingle shown on the first page of the Merchant Agreement, including the phone number – (815) 308-5170 – which she identified as the "business line" for Mixin Mingle.

The Debtor filed her chapter 7 petition on August 25, 2021.  In her schedules, the Debtor listed an unsecured claim of "LCF Group" in the amount of $22,350.  LCF was listed on the creditor matrix and was sent notice of the bankruptcy from the Bankruptcy Noticing Center on August 28, 2021.

On September 9, 2021, at around 4:34 p.m., Carlos Marinez, a recovery specialist employed by LCF, called the Mixin Mingle business line and left the following voicemail:

> Hey Nate, when you gonna stop being a deadbeat merchant and give Last Chance Funding a call?  You know you owe us money, Nate.  Pick up the phone, give us a call, and let's resolve your account.  We're not going to stop coming after you Nate until you pay Last Chance Funding the money you us.

(Pl.'s Ex. 1.)

The next morning, on September 10, 2021, the Debtor forwarded the voicemail to her attorney in an email along with the following message:

> Checking in.  Is there anything I'm supposed to do/plan on at this time for my bankruptcy?  Most of the calls have stopped, but Last Chance Funding just called with this message yesterday, Carlos Marinez is the name of the person and he just sounds threatening.  I don't know if there's anything I can do about that since he's calling the business.  Let me know what you think.

(Def.'s Ex. B.)

A couple hours later that same day the Debtor filed a motion for entry of an order enforcing the automatic stay and for contempt.  That motion was then refiled several days later to correct a docketing error, followed by an unsuccessful attempt to file an amended motion.  Eventually that motion was withdrawn at the Debtor's request, and the Debtor filed the pending motion.  During a preliminary hearing on the motion, the parties represented to the court that there were no allegations of a continuing violation of the stay as there had been no further contact from LCF.

In her motion, the Debtor argues that LCF is one of her creditors pursuant to the personal guaranty she executed and that it had not sought or obtained relief from the automatic stay prior to the phone call on September 9, 2021.  The Debtor further contends that LCF's voicemail was directed at her, and not at any other co-debtor.  She alleges the call caused her to suffer humiliation, embarrassment and emotional distress, and she had to incur attorney fees to prosecute the motion.  Citing section 362(k) of the Bankruptcy Code, the Debtor seeks actual damages, attorney fees and costs, as well as punitive damages, based on LCF's alleged violation of the automatic stay.

LCF filed a written response in which it admits many of the preliminary allegations in the motion.[3] LCF argues, however, that it was pursuing the Debtor's company (a non-debtor at the time) using the contact information provided on the Merchant Agreement, and that the voicemail was directed to the Debtor's company, Mixin Mingle, not the Debtor. LCF further asserts that it had no further communication with the Debtor after the Debtor's attorney contacted LCF.

The court held an evidentiary hearing, at which each side presented testimony from a single witness. After listening to the voicemail,[4] the Debtor admitted that the call from LCF went to (815) 308-5170, which is the telephone number for Mixin Mingle. Nevertheless, the Debtor testified that she received the voicemail and believed it was directed at her because the caller used the name "Nate," a common mispronunciation of her first name. She also testified that, prior to this voicemail, she had frequently received debt collection phone calls from LCF and remembered the name Carlos Marinez from those calls.[5]

---

[3] LCF's response to the Debtor's motion is improperly in the form of an answer. *See* ILNB Local Rule 5005-3(B) ("A response to a motion must not be in the form of an answer to a complaint but must state in narrative form, any reasons legal or factual, why the motion should be denied, unless the judge orders otherwise."). Nevertheless, LCF's position on the motion is apparent from its response.

[4] A recording of the voicemail was received into evidence without objection as "Plaintiff's" Exhibit 1. This is not an adversary proceeding, and the Debtor is more accurately described as Movant, not Plaintiff. In any event, the court will refer to the exhibits as they were designated by the parties.

[5] The Debtor did not elaborate on these prior phone calls, but the court finds this testimony to be a bit misleading, even if unintentionally so. The questions posed by counsel and the answers given by the witness imply that the previous phone calls had gone to the Debtor directly, as opposed to going to the Mixin Mingle business line. However, there is no evidence to suggest that LCF ever had the Debtor's personal phone number or contacted her by telephone at any number other than the phone number listed on the Merchant Agreement.

The Debtor testified that this voicemail caused her emotional distress, which she described as "fear, panic, not understanding what that meant and it felt threatening and scared me." She also stated that the call came at an "emotionally difficult" time for her because it was the anniversary of her grandmother's birthday, who had recently passed away. When asked if she experienced any physical symptoms as a result of this emotional distress, the Debtor explained that she had "ongoing IBS" that was triggered by the stress over this voicemail. When asked about medical treatment for her "IBS flare," the Debtor responded that she ordered Banatrol, an anti-diarrheal medication, from Amazon that same evening, approximately four hours after receiving the voicemail, at a cost of around $30. The Debtor subsequently introduced an email confirmation showing that she placed an order with Amazon at approximately 9:57 p.m. on September 9, 2021, which included six items for a total of $179.47. (Pl.'s Exs. 2, 3.)[6] One of the items purchased[7] was Banatrol at a cost of $37.99.

The Debtor further testified that she was not employed at the time and her emotional distress from receiving the voicemail disrupted her job search. In particular, she testified that she did not submit any job applications the following day, explaining that she had lost focus on trying to look for a full-time job due to the

---

[6] LCF objected to these exhibits because they had not been previously disclosed and based on relevance. Debtor's counsel explained that they had not been disclosed because he had only received them from the Debtor less than an hour before the hearing. Ultimately, the court received Plaintiff's Exhibits 2 and 3 over LCF's objections.

[7] Plaintiff's Exhibit 3 was identified as a screenshot from the Debtor's phone of her Amazon order, but it does not show the complete order details. In addition to the purchase of Banatrol, the details of which are shown on Exhibit 3, the Debtor also purchased some coffee, vitamins, and three other unknown items.

stress of the situation and trying to track down additional voicemails.  The Debtor also testified that she had to hire an attorney to prosecute this matter and will be asking for her attorney's fees as damages.

On cross-examination, the Debtor verified that she executed the Merchant Agreement with LCF and provided the information for Mixin Mingle that appears on that document. (*See* Def.'s Ex. A.)  The Debtor also admitted that the phone number provided on the Merchant Agreement was the business phone number for Mixin Mingle and was the same number used by LCF to leave the voicemail.  She acknowledged that her email to her attorney indicated that Marinez was "calling the business." (*See* Def.'s Ex. B.)  On re-direct, the Debtor reiterated her beliefs that the voicemail was directed at her, called her a deadbeat, and said she can't run from them.

Carlos Marinez testified that he was employed by LCF as a recovery specialist and was the individual who left the voicemail message on September 9, 2021. Marinez stated that, on that date, he called the phone number that was listed on the contract with Mixin Mingle and believed he was calling the company.  He further indicated that he was not aware that the Debtor had filed for bankruptcy and that if he had been aware of that fact, he would not have called.  After counsel for LCF indicated that the Debtor's company had not yet filed for bankruptcy as of September 9, 2021, counsel asked Marinez whether he would have contacted the company to collect on the account under those circumstances.  Marinez replied, "of course." Marinez also testified that he has not made any contact with either the company or

the Debtor since the September 9, 2021 voicemail, and that he did not have any "verbal contact" with the Debtor on September 9, 2021.

On cross-examination, Marinez listened to the voicemail and acknowledged that he used the name "Nate" in his comments, not Mixin Mingle. Marinez explained that, on an average day, he has approximately 75 debt collection files that he calls about, and that on September 9, 2021, the file for Mixin Mingle showed up on his call list. Marinez testified that the phone number he calls is inputted in the system based on the number provided on the contract. Although he did not pull the specific Merchant Agreement with Mixin Mingle before making the phone call on September 9, 2021, Marinez testified that he knew his call went to the business because that is what it stated on his screen. Marinez also stated that the message he left was not from a prepared script, but was just his attempt to get the merchant to call him back and make good on its cash advance with LCF.

## JURISDICTION

The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. "A request for sanctions for alleged violations of the automatic stay may only arise in a case under the Bankruptcy Code and, therefore, is a core proceeding and within the court's constitutional authority." *Cordova v. City of Chicago (In re Cordova)*, 635 B.R. 321, 330 (Bankr. N.D. Ill. 2021); *see also* 28 U.S.C. § 157(b)(2)(A), (G) and (O).

## DISCUSSION

"Under the Bankruptcy Code, filing a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts outside the umbrella of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. ___, 140 S. Ct. 582, 586 (2020) (citing 11 U.S.C. § 362(a)). Section 362 also provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009). As the bankruptcy court recently explained in *In re Henricks*, "the term 'willful' refers to the deliberateness of the conduct, coupled with knowledge of the filing. It does not require an intent to violate the law." 632 B.R. 744, 762 (Bankr. W.D. Wis. 2021). "Debtors carry the burden to establish the extent of any damages" which "must be shown with reasonable certainty." *In re Frasier*, 613 B.R. 271, 277 (Bankr. W.D. Wis. 2020). "Damages are typically not awarded for inadvertent or mere technical violations of the stay." *Id.* at 276.

To recover damages under section 362(k), "a debtor must establish, by a preponderance of the evidence, that: (1) a bankruptcy petition was filed; (2) the debtor is an individual under the automatic stay provision; (3) the creditor had notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages." *In re Sori*, 513 B.R. 728, 732 (Bankr. N.D. Ill. 2014). Here,

there is no dispute that the first two factors have been satisfied as the Debtor had filed her chapter 7 petition and the automatic stay in her case was in effect at the time of the voicemail.

As to the third factor—whether LCF had notice of the petition—LCF argued at the hearing that there was no notice based on Marinez's testimony that he was not aware that the Debtor had filed for bankruptcy at the time he made the phone call. For purposes of section 362(k), "[n]otice of the bankruptcy filing can be either through formal notice or otherwise." *In re Gaddy*, No. 09-B-00766, 2010 WL 3324961, at *2 (Bankr. N.D. Ill. Aug. 20, 2010) (quotation marks omitted). LCF admits in its response to the motion that it was named as a creditor in the Debtor's petition and on the creditor matrix, and the court's own docket reveals that notice was sent to them. There has been no evidence presented to suggest that the address used to send notice to LCF was incorrect or that the mail was returned as undeliverable. Accordingly, the court finds that LCF had actual notice of the bankruptcy petition. *See In re Sanders*, No. 09-91176, 2010 WL 582666, at *2 (Bankr. C.D. Ill. Feb. 16, 2010) (finding actual notice where "[t]he bankruptcy notice was mailed to the street address of the Creditor's headquarters"). Marinez's own ignorance of the filing does not refute the fact that LCF received proper notice. *See, e.g.*, *In re McHenry*, 179 B.R. 165, 167 (B.A.P. 9th Cir. 1995) ("The fact . . . that the employee who first made contact with the appellants did not know the stay was in effect, does not mean the automatic stay was any the less violated.").

Turning now to the primary issue in dispute, the court notes that it is a close call whether the voicemail message from LCF was a willful violation of the automatic

stay. On the one hand, LCF was contacting Mixin Mingle at the only phone number it had for the business, and Mixin Mingle had not filed its own bankruptcy petition at the time of the call. Therefore, on the surface, there was nothing prohibiting LCF from making that phone call in an effort to collect on the debt owed by Mixin Mingle. *See Zack v. Transp. All. Bank (In re Zack)*, 623 B.R. 168, 173 (Bankr. W.D. Pa. 2020) (noting that "formal distinctions between debtor-affiliated entities are maintained when applying the automatic stay"). On the other hand, as the Debtor has emphasized, the voicemail from Marinez referenced (or at least attempted to reference) the Debtor by her first name when the message included the name "Nate." *See Colorado E. Bank & Tr. v. McCarthy (In re McCarthy)*, 421 B.R. 550, 566 (Bankr. D. Colo. 2009) (rejecting the creditor's argument that a phone call to the debtor was not a violation of the automatic stay because the company was "not in bankruptcy" and it "called Debtor only as a member of [an LLC] with regards to [the company's] debt"). After careful consideration, the court finds the circumstances here to be similar to the facts involved in the *Zack* case and reaches a similar conclusion, namely that LCF's phone call to the business line of Mixin Mingle did not violate the automatic stay in place in the Debtor's individual case. In doing so, the court also concludes that *McCarthy* is distinguishable from the instant case.

In *Zack*, the debtor was the principal owner of KBZ Transport, LLC, which had obtained a commercial loan from TAB Bank. *Id.* at 171. In connection with that loan application, the debtor provided the mailing address, phone number, and email address for KBZ. The debtor never advised the bank not to use that contact information to contact KBZ, even though it was also the debtor's home address,

personal cell phone number, and personal email address. The debtor also was a guarantor of the loan made to KBZ. After the loan defaulted, the bank placed various phone calls, letters, and emails to KBZ, including several emails and one phone call that occurred after the debtor filed his bankruptcy petition. The court, on a motion for summary judgment, found that there was "no genuine issue of material fact that the activities of TAB Bank were directed against KBZ and not Mr. Zack personally," and held that "no automatic stay violation occurred." *Id.* at 174. In so holding, the court noted that "the Contact Information for KBZ was provided by Mr. Zack to TAB Bank and that TAB Bank had no information indicating that the emails, phone numbers, and mailing addresses were incorrect or were not where KBZ may be contacted." *Id.* The court further noted, as to the debtor's guaranty, that "none of the emails and written correspondence . . . reflects statements to the effect that TAB Bank was calling the 'guaranty.' Indeed, the guaranty is mentioned nowhere in any of the correspondence." *Id.*

In this case, similar to what had occurred in the *Zack* case, LCF called the phone number for Mixin Mingle that had been provided by the Debtor. Indeed, unlike in *Zack*, the phone number was not even the Debtor's personal cell phone number, but rather was a dedicated business line for the store. Marinez testified that he believed he was calling the business in order to get the company to "make good" on the cash advance it had received by entering into the Merchant Agreement, and by all accounts that is precisely what he was doing. To be clear, some of Marinez's comments, taken in isolation, could be viewed as attempting to collect a debt from the Debtor ("You know you owe us money, Nate."). But the court finds from the overall

context of the message that the call was directed at Mixin Mingle, as evidenced by references to being a "merchant" and asking to "resolve your account." The Debtor, as an individual, was only a guarantor; she was not the merchant and did not have an account with LCF. And while it is true that Marinez repeatedly used the Debtor's first name in his message, he did not specifically invoke the Debtor's guaranty or indicate that LCF was seeking to collect from the Debtor individually. Something more than using the Debtor's first name in a voicemail to the Debtor's company is required to willfully violate the automatic stay.

The circumstances in the *McCarthy* case provide an example of a creditor doing that "something more" and actually crossing the line between contacting a non-debtor business to collect on a debt and attempting to collect on that debt from the Debtor directly in violation of the automatic stay. In *McCarthy*, the debtor started a restaurant that was owned and operated through several limited liability companies in which he held a 50% interest. 421 B.R. at 556. One of those companies, ADUM Properties, LLC ("AP"), obtained a loan from the creditor bank, which was partially guaranteed by the debtor. After the company defaulted on the note, and the debtor had filed his individual bankruptcy petition, one of the bank's representatives called the Debtor, asking him to reaffirm the debt and threatening to close the restaurant. The bank's representative also sent a letter to the Debtor and the other members of the LLC, which sought repayment of the note and also threatened "further legal action against ADUM Properties, LLC and the three of you individually." *Id.* at 558. The court in *McCarthy* found both communications to be a willful violation of the automatic stay. In particular, the court reasoned that when the bank's

representative "asked about reaffirmation, he was referring to Debtor's personal guaranty" of the note, and that the threat to close the restaurant, the Debtor's primary source of income, "pushed [the] call over the line from mere reaffirmation solicitation to a coercive act to collect on a prepetition debt." *Id.* at 566-67. Likewise, the court found that the explicit threat in the letter of "[p]ursuing Debtor 'individually' or 'personally' necessarily refers to Debtor's guaranty." *Id.* at 567. The court explained in its decision that "any right the Bank has to pursue AP postpetition does not include the right to pursue Debtor individually for his personal guaranty obligation" and awarded attorney's fees and punitive damages to the Debtor as a result of the bank's violation of the automatic stay. *Id.* at 568.

Ultimately, although as mentioned above it is a close call in this case, the court finds that LCF did not willfully violate the automatic stay when it called the business line for Mixin Mingle in an effort to collect a debt from the business. Even though Marinez used the Debtor's first name in the message he left, and his menacing comments warrant criticism, there was no specific invocation of the Debtor's guaranty or a threat to pursue the Debtor individually for the company's debt. That being said, it is understandable why the Debtor felt like the voicemail was directed at her, as small-business owners may tend to blur the lines between the corporate entity and their own personal circumstances. This is especially true when the caller refers to the owner by their first name, or some variant thereof. If it has not already done so, LCF may well want to revisit its policies and procedures for when it receives notice of a guarantor's bankruptcy petition.

Finally, having found no willful violation of the automatic stay, the court need not consider the Debtor's claim for damages. Nevertheless, a few brief comments are warranted because the court would have declined to award damages in this case, even if it had concluded that there was a technical violation of the automatic stay when Marinez used the Debtor's name a few times in the voicemail. As noted above, "[d]amages are typically not awarded for inadvertent or mere technical violations of the stay." *Frasier*, 613 B.R. at 277. Likewise, damages are not typically awarded based solely on the Debtor's emotional distress. *See Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) (suggesting that "[t]he potential for abuse if damages for a purely emotional injury can be awarded in suits to redress violations of the automatic stay is considerable"); *see also In re Thompson*, 426 B.R. 759, 766 (Bankr. N.D. Ill. 2010) ("The purpose of § 362(k)(1) is . . . to restore this debtor to the actual financial position he would have occupied had the defendant not violated the stay."). Finally, "[d]ebtors are not entitled to an award of actual damages, including costs and attorney's fees, where a stay violation is no longer continuing, and a debtor fails to mitigate his or her damages." *Frasier*, 613 B.R. at 277; *see also id.* at 278 ("Attorneys should not receive a windfall of attorneys' fees when most, if not all, of the time expended occurred after the resolution of any technical violation.").

Putting all these concepts together, the court finds that the debtor has not met her burden of establishing actual damages. It is notable that the Debtor's motion only mentions that she suffered from "humiliation, embarrassment and emotional distress." (ECF No. 31 ¶ 11.) There are no allegations of a physical ailment or any financial impact stemming from the receipt of the voicemail, aside from her

anticipated attorney's fees.  LCF was therefore rightfully surprised when the Debtor began introducing previously undisclosed evidence concerning an anti-diarrheal medication the Debtor purchased from Amazon the night of the voicemail in an apparent attempt to shore up her claim for damages.  The court is also skeptical of this purported correlation between the voicemail and the purchase of this over-the-counter medication.  If the stress from receiving the voicemail really was causing the type of physical distress that Banatrol is apparently designed to alleviate, the Debtor failed to explain why she did not seek immediate relief by purchasing a similar medication from her local drug store rather than ordering it on Amazon, along with five other unrelated items, for delivery a couple days later.

For the first time at the hearing, the Debtor also alleged damages based on her emotional distress disrupting her job search for one day.  There was no testimony identifying a specific action that she had intended to take that day but was unable to accomplish.  Instead, the Debtor only provided general testimony that she did not submit any job applications that day.  The court is skeptical of this claim as well given that there was no evidence presented to show she applied for a job the following day or even the following week.  Under these circumstances, any claim for damages based on allegedly missing one day of job searching is too speculative.

The only real damages the Debtor has shown are based on the attorney's fees incurred in bringing and prosecuting this motion.  But the testimony at the hearing, as well as counsel's own comments throughout these proceedings, showed that there was no threat of an ongoing stay violation or even any contact whatsoever from LCF after the voicemail message.  It appears, therefore, that these damages could have

been mitigated, and any potential stay violation cured, by simply contacting LCF and informing them about the Debtor's bankruptcy petition. Instead, the Debtor and her attorney rushed into court, filing the initial motion less than 24 hours after the voicemail message was received. The automatic stay is generally "characterized as a shield, not a sword," *Boyer v. US Bank (In re Am. Lodging, Inc.)*, 397 B.R. 906, 909 (Bankr. N.D. Ind. 2008) (citing *Winters by and Through McMahon v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996), and awarding damages in this case based solely on the attorney's fees involved where no real damages have occurred would not be appropriate, *see Frasier*, 613 B.R. at 278-79.

## CONCLUSION

For all the reasons stated above, the Debtor's motion seeking damages pursuant to section 362(k) for an alleged violation of the automatic stay (ECF No. 31) is denied. A separate order will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: March 29, 2022

ENTER

Thomas M. Lynch
United States Bankruptcy Judge